PAIRQUE ET AL. v. LAKE EUGENIE LAND DEVELOPMENT, INC.

(November 18, 1929. Opinion and Decree.)
(December 16, 1929. Rehearing Refused.)

Merrick, Schwarz, Guste, Barnett & Redmann, of New Orleans, attorneys for plaintiffs, appellants.

Marcus & Corkern, of New Orleans, attorneys for defendant, appellee.

JANVIER, J. This matters comes before us on appeal from a judgment maintaining an exception of no cause of action and dismissing plaintiffs' suit.

The petition alleges that plaintiffs had leased for trapping purposes certain lands of which defendants thought themselves to be the owners. The lease, which was made part of the petition, provided in paragraph ten:

"In the event Lessee should be legally ejected from any of the lands now leased due to the fact that the title of Lessor is defective, then Lessor shall compensate Lessee by payment to Lessee of the sum of fifty cents (50c) per acre for the lands from which Lessee is ejected, such payment to be as liquidated damages in full and complete settlement of all claims of any nature whatsoever which by any means may legally vest in Lessee by virtue of such ejectment. Provided that the total amount to be paid by the party of the second part shall in no event exceed the sum of one thousand dollars."

(The lease was typewritten, but the words in bold type above were written in in ink.)

The allegations in the petition at which the exception is particularly directed are contained in paragraphs VI, VII and VIII, the gist of which paragraphs is that, after petitioners, as lessees, had taken possession of the leased premises, certain other parties, claiming to be the owners of part of the leased land, notified lessees to vacate, and that lessees, after determining by title examination that the claim of these other parties was well founded, in order "to avert possibly dangerous results," abandoned that part of the leased land which was claimed by the other parties, and "immediately notified the attorneys of the defendant herein of such dispossession and ejectment." Exceptors contend that the rights of the lessees are controlled exclusively by R.C.C. art. 2704, which reads as follows:

"If the persons by whom those acts of disturbance have been committed, pretend to have a right to the thing leased, or if the lessee is cited to appear before a court of justice to answer to the complaint of the person thus claiming the whole or a part of the thing leased, or claiming some servitude on the same, he shall call the lessor in warranty, and shall be dismissed from the suit if he wishes it, by naming the person under whose rights he possesses."

It is thus claimed that petitioners, not having alleged that they have been cited to appear before a court of justice, and not having alleged that they called defendants in warranty, have not set forth a cause of action.

The lease itself, at first reading, gives the impression that it was not intended by the parties that the lessees should have the right, on private or ex parte examination, to decide for themselves whether or not they would be justified in abandoning the premises. The insertion in the typewritten lease of the word "legally" in ink indicates that only ejectment by process of law should give rise to this right to the refund.

But if such was the intention, plaintiffs would be entirely without redress, and, assuming as we must, that their allegations are true, we would find them forced off the leased land because of defective title of their lessors, and yet powerless either to maintain their possession or to recover back their lease money. They have been ejected, if their petition is true, not as the result of legal proceedings into which, by a call in warranty, they might bring their lessors, but by force, and, in fact, we are told in the brief and in oral argument, at the point of a gun. Surely they were justified in leaving, and if they were justified in leaving, it is illogical to say that as a result of leaving they have lost their rights against exceptors, whose defective title, if the petition is true, is the cause of the ejectment.

But, say exceptors, plaintiffs are estopped to question the validity of the title of their lessors. The rule of estoppel contended for simply means that a lessee cannot, either to claim title himself, or to avoid the obligations of his lease, question his lessor's title, but the rule does not go so far as to permit under pretense of its protection wrongs to be covered up and injustices to escape investigation. As the Supreme Court said in Harvin vs. Blackman, 108 La. 434, 32 So. 452, 456:

"It is very true that the courts have frequently recognized that a person who has entered into possession of property under lease from another will not generally be permitted during the continuance of the lease to impugn the lessor's title, but this doctrine has numerous exceptions. Its application should be invoked in aid of work-

ing out equity, and not made to cover wrong. Estoppels are not favored in the law, and, where there is reason even to suspect that they may be utilized for ·purposes of oppression, the whole subject-matter from which they seek to exclude investigation should be thrown open to the light. It may be that plaintiff's assertions are all wrong, and that defendant's claim that he is estopped may be well grounded; but we feel that justice would be better subserved in this case by dealing with the question of estoppel at the end of a trial, after evidence adduced, than at the beginning of one, on unexplained papers. Succession of Francez, 49 La. Ann. 1740, 23 So. 254."

Here the parties agreed that, in case of defective title and ejectment as a result thereof, a refund should be paid. If plaintiffs are estopped to show defective title, then that clause in the lease is meaningless.

Exceptors further contend that there is no proper allegation that notice of the claim of the third parties was communicated to them. They object to the allegation "that petitioners immediately notified the attorneys of the defendant," contending that notice should have been given to the defendant or exceptor itself, and not to its attorneys. It appears that the attorneys-at-law of the exceptor are also its agents and attorneys in fact and have appeared for it throughout the negotiations. But even if the petition is defective by reason of insufficiency of allegation in Article VIII, from which we have above quoted, we find in Article IX of plaintiff's petition the following: "that petitioners notified said defendant of this fact" (the ejectment). Surely this allegation is sufficient to permit of the introduction of evidence to show what notice was given.

We are of the opinion that the petition sets forth a cause of action, and therefore, it is ordered that the judgment appealed from be and it is annulled, avoided and reversed, and that this matter be remanded to the district court for further proceedings according to law.